**Wolfgang EISERMANN, Petitioner,**

v.

**Eric PENAROSA, et al., Respondents.**

**Civil No. 98–00789 DAE.**

United States District Court,
D. Hawaii.

Jan. 28, 1999.

Wolfgang Eisermann, Appleton, MN, pro se.

Donn Fudo, Office of the Prosecuting Attorney, Honolulu, HI, for Respondents.

## ORDER DISMISSING PETITION

DAVID ALAN EZRA, Chief District Judge.

On September 28, 1998, Petitioner WOLF-GANG EISERMANN ("Petitioner"), presented to court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254. On October 8, 1998, Petitioner was ordered to amend the petition to name the correct respondent, specifically, to name the warden of Petitioner's prison in Texas. On October 28, 1998, Petitioner submitted an Amended Petition naming State of Hawaii Attorney General Margery Bronster and Halawa Warden Eric Penarosa as Respondents to the Amended Petition. On December 14, 1998, the Honolulu City and County Prosecutor's Office timely answered the Amended Petition on behalf of Respondents. On December 31, 1998, Petitioner filed a traverse to Respondents' Answer to the Amended Petition. Upon careful review of the Amended Petition, Respondents' Answer and Memorandum in support, Petitioner's traverse, as well as the full record before the court, Respondents' motion to dismiss the Amended Petition is GRANTED.

## BACKGROUND

On November 27, 1993, Petitioner was indicted on three counts of Sexual Assault in the First Degree, in violation of Hawaii Revised Statutes ("Haw.Rev.Stat."), Section 707–730(1); one count of Attempted Sexual Assault in the First Degree, in violation of Haw.Rev.Stat. §§ 707–500 and 707–730(1)(a); one count of Kidnapping, in violation of Haw. Rev.Stat. § 707–720(1)(d); and four counts of Sexual Assault in the Third Degree in violation of Haw.Rev.Stat. § 707–732(1)(e). (See Answer at 1–2). On August 23, 1994, Petitioner was found guilty by jury trial of all counts against him. Id. On October 21, 1994, Petitioner was sentenced to twenty years incarceration for Counts I–IV, ten years incarceration for Count V, and five years incarceration for Counts VI–IX, all terms to run concurrently.[1]

On or about July 29, 1995, Petitioner directly appealed his conviction. (See Answer

---

1. For future reference, the court notes that Respondents direct the court to "Ans. Br." in support of the facts as stated in the Answer. How-

at 1–2). On direct appeal, Petitioner raised two points of error: (1) there was insufficient evidence of "strong compulsion" on Counts I–IV and VI–IX to sustain the guilty verdict; and (2) there was no evidence of "penetration" to sustain the guilty verdict on Count II. (*See id.,* Exhibit A at 4). On April 24, 1997, the Intermediate Court of Appeals affirmed Petitioner's conviction. Approximately one year later, Petitioner filed a motion with the Hawaii Supreme Court dated July 3, 1998, which was construed as a motion for extension of time within which to file an application for writ of certiorari. On July 9, 1998, the Hawaii Supreme Court denied the motion as untimely filed pursuant to Haw.Rev.Stat. § 602–59(c), stating that " § 602–59(c) does not allow for extensions of time to file a writ of certiorari." (July 9, 1998 Hawaii Supreme Court Order).

Petitioner filed his original federal habeas petition in this court on September 28, 1998. Upon direction from the court, Petitioner filed the Amended Petition on October 29, 1998. The Amended Petition raises two grounds for relief: (1) that the Prosecutor failed to disclose exculpatory evidence to the defense; and (2) that Petitioner had ineffective assistance of counsel.[2]

### DISCUSSION

#### A. Jurisdiction

The Amended Petition names "Eric Penarosa, Warden, and Margery Bronster, Attorney General State of Hawaii" as Respondents. Thus, Petitioner has not explicitly named the Hawaii official with custody over him as respondent to this petition. However, Petitioner is proceeding *pro se* and this court must "construe a pro se litigant's habeas petition with deference." *Belgarde v. Montana,* 123 F.3d 1210, 1213 (9th Cir.1997). Apparently, Petitioner was originally confined at Halawa, then transferred to Texas, and later transferred to Minnesota. (*See*

Amended Petition, Address, and Petitioner's First Response, Address). These out-of-state transfers have obviously confused Petitioner and have frustrated his attempts to name a proper respondent. Petitioner diligently attempted to comply with this court's directive to name the Hawaii official who has responsibility over him, by naming the last known such official, Eric Penarosa.

According to the advisory committee note to the Rules Governing Section 2254 Cases in the District Courts, Rule 2, the proper respondent to be served in the usual case may be "either the warden of the institution in which the petitioner is incarcerated or the chief officer in charge of state penal institutions." Rule 2(a), 28 U.S.C. foll. § 2254, advisory committee note; *see also Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 894–896 (9th Cir.1996) (California Director of Corrections may be proper respondent if he has the "power to produce a prisoner"). In *Ortiz–Sandoval,* the Ninth Circuit discussed the inherent problems resulting from prison transfers, and determined that naming the California Director of Corrections rather than the warden did not divest the district court of jurisdiction to consider the petition. 81 F.3d at 895. Simply put, the named respondent must have "the power to produce the prisoner" should the writ issue. *Id.* The Ninth Circuit noted that "a contrary result would not serve the efficient administration of justice," and refused to dismiss the petition for lack of a proper respondent. *Id.* at 896. The court stated that "[i]n cases where the prisoner has been transferred or where his immediate custodian has ... been put in doubt, the Director of Corrections serves as an effective respondent and eliminates procedural roadblocks to resolution on the merits. Prompt resolution of prisoners' claims is a principal function of habeas." *Id.* (*citing Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)).

ever, Respondents have failed to attach a copy of this "Ans. Br." for the court to review. Respondents have also failed to supply a copy of the Petitioner's brief on appeal of his conviction, as is required by Rule 5 of the Rules Governing Section 2254 Cases in the District Court. *See* 28 U.S.C. § foll. 2254. As the basis for this order rests upon the date the Intermediate Court of Appeals issued its Memorandum Opinion, Re-

spondents need not file these documents now, but should be aware of their need in future habeas actions.

2. As Petitioner is proceeding *pro se,* this recitation of the grounds for relief is based upon the court's liberal interpretation of Petitioner's claims.

■ Here, Petitioner may not know the name of the warden of his present facility, particularly because he has been transferred again. Petitioner also may not know the name of the Hawaii Director of Public Safety, as Keith Kaneshiro has recently resigned from that position and has been replaced by Ted Sakai. Knowing that he must name a warden, or some Hawaii official who has "the power to produce" him, he named Eric Penarosa, the last such official of which he is aware. He also named State Attorney General Margery Bronster, upon this court's direction, in hopes that this would satisfy the procedural requirements. To require him to amend the petition again, after the Amended Petition has already been answered would be inefficient and would only serve to frustrate the ends of justice. Such a result would put form over function, and elevate semantic technicalities over equity. Instead, this court will liberally construe Petitioner's naming of "Eric Penarosa, Warden" as an attempt to have named the Hawaii official with the power to "produce the prisoner," and substitute Ted Sakai as Respondent instead of Eric Penarosa. Accordingly, the Clerk is directed to serve a copy of this Order, any subsequent court-produced documents, as well as a copy of the Amended Petition, upon Director D.P.S. Ted Sakai, or his representative. *See Allen v. Oregon*, 153 F.3d 1046, 1050 (9th Cir.1998) (district court's failure to serve petition upon petitioner's custodian deprives court of in personam jurisdiction).

### B. *Statute of Limitation*

Respondent argues that the Petition is time-barred by 28 U.S.C. § 2244(d)(1). The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996. For the first time, the AEDPA imposed a statute of limitation on petitions for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and § 2255. Any petitions challenging non-capital state convictions or sentences must now be filed within one year from the date on which the judgment became final by conclusion of direct review, or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). There are some occasions when the limitation period runs from a later date than the date on which the judgment became final, but Petitioner's case does not present such circumstances. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).[3]

■ The Intermediate Court of Appeals ("ICA"), affirmed Petitioner's conviction on April 24, 1997. Pursuant to Hawaii Rules of Appellate Procedure ("H.R.A.P."), Rule 31(e)(1), Petitioner then had ten days, until May 4, 1997, within which to apply for a writ of certiorari from the Hawaii Supreme Court.[4] Petitioner did not do so. Thus, Petitioner's conviction and sentence were finalized no later than May 4, 1997, and the statute began to run on that date.[5] Petition-

---

**3.** 28 U.S.C. section 2244(d)(1)(B)-(D) specifies the limitation period also might commence upon:

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**4.** When Petitioner was convicted, sentenced, and the ICA ruled upon his direct appeal, H.R.A.P. Rule 31(e)(1) stated:

No later than 10 days after the filing of a decision or ruling of the Intermediate Court of

Appeals or after the filing of an order denying a timely motion for reconsideration by the Intermediate Court of Appeals, any party may apply in writing to the Supreme Court for a writ of certiorari to review such decision or ruling.

The rule was amended May 19, 1997, to provide thirty days within which to apply for certiorari.

**5.** Had Petitioner timely applied for certiorari with the Hawaii Supreme Court, at the conclusion of the Hawaii Supreme Court's review, Petitioner would have then had ninety more days added to the calculation of the running of the statute. This would allow for the filing of a petition for certiorari in the United States Supreme Court, thus concluding "direct review" of his criminal conviction. *See Smith v. Bowersox*, 159 F.3d 345, 347 (8th Cir.1998); *Cox v. Angelone*, 997 F.Supp. 740, 744 (E.D.Va.1998). However, Petitioner's failure to apply for certiorari at the state level divested the United States Supreme Court of jurisdiction to grant or deny a

er's deadline for filing a habeas petition in federal court was one year from the ICA Order, plus the extra ten days that he had to file his application for certiorari, or May 3, 1998. Petitioner filed his original petition in this action on September 28, 1998, well beyond the statutory filing date.

The running of the one-year statute of limitation is tolled for the time period during which a properly filed application for post-conviction or other collateral review is pending in the state court. *See* 28 U.S.C. § 2244(d)(2), *see also Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996). Petitioner has not filed any petition for state post-conviction relief of which this court is aware, and is not entitled to tolling of the statute on this basis. Unless the Amended Petition is entitled to equitable tolling, it is time-barred.

The Ninth Circuit has held that the one-year statute of limitation is subject to equitable tolling if " 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time," *Calderon v. United States District Court for Central District of California,* 128 F.3d 1283, 1288–89 (9th Cir.1997) (equitable tolling is not available in most cases because extensions of time should only be granted if extraordinary circumstances beyond prisoner's control make it impossible for him to file petition on time), or upon a showing of actual innocence that would result in manifest injustice, *see e.g., Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (petitioner must persuade district court that, in light of new evidence, no reasonable juror would have found him guilty beyond a reasonable doubt). The federal district courts are instructed to "take seriously Congress's desire to accelerate the federal habeas process" and should "only authorize extensions when this high hurdle is surmounted." *Beeler,* 128 F.3d at 1289.

In his July 1998 Motion to the Hawaii Supreme Court, which was construed as a motion for extension of time to file an application for certiorari, Petitioner gave no reason why he failed to timely apply for the writ. However, in the Amended Petition he states that "Petitioner had not been notified by Counsel of denial at the ICA." (Amended Petition at 3). This contention is meritless. First, even if his counsel wrongly abandoned his appeal after the ICA decision was issued, as Petitioner contends, Petitioner still waited more than seventeen months before he investigated his situation, attempted to file for certiorari with the Hawaii Supreme Court, and then filed his Original Petition in the federal court. Second, the July 9, 1998 Hawaii Supreme Court Order denying the untimely application for certiorari alerted Petitioner to the fact that his direct appeal had concluded on April 24, 1997. Petitioner does not explain why he waited almost three more months before he brought his claims to the federal court. Petitioner's alleged lack of legal expertise does not excuse his delay. *Cf. Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 909 (9th Cir.1986) (illiteracy of *pro se* petitioner not sufficient to meet standard of an objective, external factor amounting to "cause" for purposes of avoiding procedural bar on habeas claims). Third, this court knows of no rule that extends the pendency of an action (here, the pendency of Petitioner's direct appeal) until a prisoner receives actual notice that the action was terminated, and declines to announce such a sweeping pronouncement here. Section 2244(d)(1) does not extend the date by which Petitioner had to file his federal petition any further than May 3, 1998, and thus, this action is time-barred.

## C. *Exhaustion and Procedural Default*

A petition for a writ of habeas corpus shall not be granted unless it appears

---

writ of certiorari. *See Flynt v. Ohio,* 451 U.S. 619, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981) (Supreme Court's jurisdiction is generally limited to final judgment rendered by highest state court in which decision may be had); *Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572(1969) (if issue not presented to highest state court such that it was necessarily decided by that court when affirming the conviction, the Supreme Court has no power to consider issue).

Petitioner foreclosed this avenue by his failure to timely apply for certiorari at the Hawaii Supreme Court. Moreover, were this Court to liberally add these ninety days, in addition to the ten days already allowed, the Amended Petition would still have been untimely, as the running of the statute would have then commenced on August 6, 1997, making August 5, 1998, the final date that Petitioner could have timely filed this Petition.

that the applicant has exhausted the remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). An applicant shall not be deemed to have exhausted state court remedies if he has the right under the law of the state to raise, by any available procedure, the question presented. *See* 28 U.S.C. § 2254(c). Unless the avenue of relief is mandated by state law, a petitioner may present his claim either on direct appeal or in state collateral proceedings. *See Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir.1987). It is not necessary for a prisoner to ask the state for collateral relief based upon the same evidence and issues already decided by direct review. *See Duckett v. Godinez*, 67 F.3d 734, 739 n. 1 (9th Cir.1995); *Brown v. Allen*, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953). If a petitioner presents his claim on direct appeal, he must present his claim to the highest state court with jurisdiction to hear the claim for purposes of satisfying the exhaustion requirement. *See Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982). Even if state supreme court review is discretionary, a petitioner must seek such review in order to exhaust state remedies. *See Jennison v. Goldsmith*, 940 F.2d 1308, 1310–11 (9th Cir.1991); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir.1988). However, if a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.l, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

 Petitioner raised two claims on direct appeal: (1) there was insufficient evidence of "strong compulsion" on Counts I–IV and VI–IX to sustain guilty verdict; and (2) there was no evidence of "penetration" to sustain a guilty verdict on Count II. (*See* Answer, Exhibit A at 4). Petitioner raises two different claims in the Amended Petition: (1) that the Prosecutor failed to disclose exculpatory evidence to the defense; and (2) that Petitioner had ineffective assistance of counsel. (*See* Amended Petition). Therefore, Petitioner has failed to exhaust, or even present the claims found in the Amended Petition to any state court. Further, although Petitioner did present the claims of insufficient evidence to

convict him to the state courts, he failed to present his claims to the *highest* state court by timely applying for a writ of certiorari in the Hawaii Supreme Court, and is now barred from doing so by the ten day limitation imposed by H.R.A.P. Rule 31(e). As such, this court finds that the exhaustion requirement is satisfied because no state remedy remains available, but that Petitioner has procedurally defaulted on his claims.

 When a petitioner for federal habeas corpus relief at one time could have raised his claim in the state courts but did not, and is now barred by a state rule of procedure, he has procedurally defaulted upon that claim. *See Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). Federal review of such a claim is precluded absent a showing of cause for the procedural default and actual prejudice, or a demonstration that a fundamental miscarriage of justice would occur resulting in the conviction of "one who is actually innocent." *Bonin v. Calderon*, 77 F.3d 1155, 1158–59 (9th Cir.1996). To demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (examples include government interference or reasonable unavailability of factual basis for claim). If the petitioner has not demonstrated cause for procedural default, the federal court need not consider the issue of prejudice. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991). To establish actual prejudice, the petitioner "bears the burden of showing not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989); *U.S. v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

 Regarding the cause component, the Amended Petition is devoid of any showing that an objective factor external to the defense prevented Petitioner from filing a writ

of certiorari in the Hawaii Supreme Court following the issuance of the ICA opinion. Petitioner states that his attorney never notified him that the ICA had affirmed his conviction, and that he did not find out about this until he "noticed the denial while searching the computer law library at Newton Correctional Facility in Newton[,] Texas, on or about July of 1998." (Petitioner's Traverse to Answer at 2). Petitioner goes on to state that his attorneys, Reinhard Mohr, Esq., and Donald L. Wilkerson, Esq., are responsible for failing to notify him of the ICA's decision. (*See id.*). First, while the ineffective assistance of Petitioner's appellate counsel, in failing to apply for certiorari, might establish cause, Petitioner is required to present this particular claim of ineffective assistance of counsel to the state courts as an independent ground before he may use it to establish cause for a procedural default in a federal habeas proceeding. *See Murray v. Carrier,* 477 U.S. 478, 488–489, 106 S.Ct. 2639 (1986). By failing to present either this claim of ineffective assistance of his appellate counsel or his claim of ineffective assistance of trial counsel, (*see* Amended Petition, Ground Two), to any of the state courts, Petitioner has procedurally defaulted them.

Second, if Petitioner is arguing that his own lack of knowledge of the appeals process constitutes cause for his procedural default, he also fails. Ignorance of the legal process does not constitute cause for procedural default. *See Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 909 (9th Cir.1986). As such, Petitioner has failed to establish cause for his procedural default, and the court need not consider the issue of prejudice.

In the absence of cause and prejudice, Petitioner has also failed to make a colorable showing of actual innocence demonstrating that a fundamental miscarriage of justice has occurred. A fundamental miscarriage of justice is narrowly construed and is equivalent to actual, as opposed to legal, innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To demonstrate that there has been a fundamental miscarriage of justice, a petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup .v.*

*Delo,* 513 U.S. at 327, 115 S.Ct. 851. Petitioner claims that the victim perjured herself at trial and neither his attorney nor the prosecutor brought this purported perjury up at trial. In effect, Petitioner is claiming that the victim lied and that he is innocent. This argument failed at trial as the jury presumably found the victim more credible than Petitioner when they found him guilty on all counts. Petitioner has provided no other evidence whatsoever, beyond his own self-serving allegations, that the victim perjured herself. Without such evidence, Petitioner has completely failed to show that he is actually innocent such that no reasonable trier of fact could have found him guilty.

Petitioner also argues that his trial counsel was ineffective and that the trial judge refused to remove him at Petitioner's request. Petitioner states that the judge told him to bring up his objections to counsel on appeal. Petitioner does not explain why he failed to bring a claim of ineffective assistance of trial counsel either on direct appeal, as he was directed by the judge, or upon a Rule 40 Petition for post-conviction relief. Again, he has failed to provide evidence that would support a claim of actual innocence regarding this claim. Accordingly, this court finds that Petitioner has procedurally defaulted on his claims such that federal habeas review is precluded, and Petitioner has failed to show cause and actual prejudice or a fundamental miscarriage of justice to excuse his procedural default.

### D. *Petitioner's Other Motions*

On January 4, 1999, Petitioner moved for discovery of certain trial and pre-trial transcripts. On January 25, 1999, Petitioner moved for a writ of habeas corpus ad testificandum to ensure his presence at the April 5, 1999, Rule 16 scheduling conference. Based upon the foregoing analysis dismissing the Amended Petition, the motions are also DENIED.

### CONCLUSION

For the foregoing reasons, the Amended Petition is DISMISSED as time-barred pursuant to 28 U.S.C. § 2244(d)(1)(A), and as

procedurally defaulted. All pending motions in this action are DENIED.

IT IS SO ORDERED.