Francisco PORTUONDO–GONZALES,
Movant/Defendant,

v.

UNITED STATES of America,
Respondent/Plaintiff.

CIVIL ACTION NO. 3:00CV–P708–S.
CRIMINAL ACTION NO. 3:98CR–67–S.

United States District Court,
W.D. Kentucky,
at Louisville.

May 31, 2001.

Francisco Portuondo–Gonzalez, Lexington, KY, pro se.

Alexander T. Taft, Jr. AUSA, Louisville, KY, for U.S.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

A two-count indictment returned on June 1, 1998 charged Francisco Portuondo–Gonzales ("Portuondo") with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). *See* DN 42. Portuondo eventually pled guilty to both counts. *See* DNs 183, 184. He was then sentenced to 120 months in prison, supervised release for a term of five years following his release from prison, and a $200 assessment. *See* DN 264.

This matter is now before the court on the motion of Portuondo, *pro se*, for an extension of time to file a petition pursuant to 28 U.S.C. § 2255 (" § 2255") seeking to vacate, set aside or correct his sentence.

There are several dates which are relevant to our determination of this matter. They are:

1. September 20, 1999—The judgment of Portuondo's conviction was entered by this court. *See* DN 264.

2. September 30, 1999—The judgment of Portuondo's conviction became final upon the expiration of the ten day period in which he could have filed a notice of appeal with this court. *See* Fed. R.App. P. 4(b) ("Rule 4(b)").

3. June 26, 2000—The Supreme Court of the United States decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

4. September 18, 2000—Portuondo filed this motion for an extension of time to file a § 2255 petition. *See* DN 268.

5. October 31, 2000—Portuondo filed his § 2255 petition citing as grounds the ineffective assistance of counsel and the *Apprendi* decision, *supra*. *See* DN 271.

## DISCUSSION

The issues to be determined are: (1) whether Portuondo filed his § 2255 petition outside the applicable one-year statute of limitations; and if so,(2) whether that petition should, nevertheless, be deemed timely filed based on the doctrine of equitable tolling due to the extraordinary circumstances with which Portuondo was allegedly faced. These two issues must be determined with respect to both Portuon-

do's *Apprendi* claim and his ineffective assistance of counsel claim.

■ Neither Portuondo nor the United States addressed in their briefs the issue of whether *Apprendi* may be applied retroactively to the collateral review of Portuondo's conviction. If *Apprendi* is retroactively applicable, then that part of his § 2255 petition filed on October 31, 2000 which relies on the *Apprendi* decision was timely filed. If *Apprendi* may not be applied retroactively on collateral review, then that part of Portuondo's petition must be dismissed. Regardless, Portuondo's petition with respect to his ineffective assistance of counsel claim was required to be filed on or before September 30, 2000, one year after the date the judgment of his conviction became final.[1] Since Portuondo failed to file his petition before this date, the parties' equitable tolling arguments are relevant to our determination of whether we may consider that part of Portuondo's petition.

### I. *Apprendi*

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S.Ct. at 2362–63. With respect to a defendant who pleads guilty to violating 21 U.S.C. § 846, a viable *Apprendi* claim may exist if:

the indictment failed to charge [him or her] with conspiracy to distribute a specific quantity of drugs; if [the defen-

---

1. According to Rule 4(b), Portuondo was required to file a notice of appeal within ten days of the entry of the judgment of his conviction. *See* Rule 4(b)(1)(A). Since Portuondo's judgment of conviction was entered on September 20, 1999, Portuondo had until September 30, 1999 to file a notice of appeal. *See* Fed. R.App. P. 26. Because of his failure

to do so, Portuondo's judgment of conviction became final on that date. *See Wims v. United States*, 225 F.3d 186, 188 (2d Cir.2000). Therefore, the one-year limitations period for filing a § 2255 petition would have expired on September 30, 2000, approximately one month before Portuondo filed his petition.

dant] subsequently pleaded guilty without stipulating, either in a plea or in a factual basis, to the amount of drugs for which he [or she] assumed responsibility; and if the district court had determined at sentencing, by a preponderance of the evidence, the amount of drugs attributable to [the defendant] which subjected him to an enhanced statutory sentence.

*United States v. Harper,* 246 F.3d 520, 530 (6th Cir.2001).

However, if a defendant "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing," then *Apprendi* has no bearing on his or her sentence. *See id.* at 530–31.

Here, Portuondo was indicted and charged with: (1) possession with intent to distribute five kilograms of cocaine; and (2) conspiracy to possess with intent to distribute cocaine. *See* DN 42. Following the entry of his guilty plea as to both counts, Portuondo was sentenced according to 21 U.S.C. § 841(b)(1)(A), which calls for a mandatory minimum sentence of ten years imprisonment, because of the amount of cocaine at issue. *See* DN 264. If the rule of *Apprendi* may be retroactively applied to this case, and if Portuondo did not stipulate to the quantity of cocaine he conspired to possess with the intent to distribute, then Portuondo may have been wrongly sentenced according to an increased statutory penalty range. *See United States v. Ramirez,* 242 F.3d 348, 351–52 (6th Cir.2001); *United States v. Flowal,* 234 F.3d 932, 937 (6th Cir.2000).

§ 2255 contains a one-year statute of limitations which begins to run from the latest of four possible dates. Relevant to Portuondo's *Apprendi* claim, § 2255 states that "[t]he limitation period shall run from ... (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review...." Therefore, to determine when the limitation period began running, we must determine: (1) whether, in *Apprendi,* the Court "initially recognized" the right asserted by Portuondo; and (2) whether that "newly recognized" right has been made "retroactively applicable to cases on collateral review."

While the Sixth Circuit has not addressed whether *Apprendi* announced a "newly recognized" right, other courts have uniformly concluded that it did, and we join those courts in that conclusion. *See, e.g., United States v. McIntosh,* 236 F.3d 968, 974–75 (8th Cir.2001); *Jones v. Smith,* 231 F.3d 1227, 1236 (9th Cir.2000).

Whether *Apprendi* is retroactively applicable to cases on collateral review is less clear because the Supreme Court has not explicitly made it so. *See Jackson v. United States,* 129 F.Supp.2d 1053, 1057 (E.D.Mich.2000). However, the analysis in which a court must engage to determine the retroactivity of any rule in cases on collateral review is well-established.[2]

First, a reviewing court must determine whether the rule sought to be applied retroactively is a rule of substantive criminal law or a rule of criminal procedure. If it

---

**2.** Lower courts are at odds over whether § 2255 authorizes them to determine whether a new rule may be applied retroactively to cases on collateral review or whether only the Supreme Court may make this determination. *Compare Jackson, supra, with United States v. Wood,* 160 F.Supp.2d 912 (N.D.Ill.2001). Be-

cause we ultimately conclude that *Apprendi* may not be applied retroactively on collateral review, we need not address whether lower courts may make this determination. *See United States v. Sanders,* 247 F.3d 139, 146 n. 4 (4th Cir.2001).

is the former, then it will generally apply retroactively to cases on collateral review. *See United States v. Mandanici,* 205 F.3d 519, 525 (2d Cir.2000) (noting that "[w]hile a new rule of constitutional criminal procedure generally does not apply retroactively on collateral review, a new rule of substantive criminal law is presumptively retroactive ...."). If the rule is a new rule of criminal procedure, however, it will not be retroactively applied unless it falls within one of two exceptions. *See Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding that "new rules generally should not be applied retroactively to cases on collateral review").

While the conclusions reached by lower courts that have considered whether the rule of *Apprendi* is one of substantive criminal law or one of criminal procedure are far from uniform, we find the reasoning of the Court of Appeals for the Fourth Circuit in *United States v. Sanders,* 247 F.3d 139 (4th Cir.2001), to be persuasive. We agree with that court's conclusion that the rule of *Apprendi* was one of criminal procedure because it "dictates what fact-finding procedure must be employed to ensure a fair trial." *Id.* at 147 (citations omitted). The *Apprendi* court was not asked to interpret a substantive criminal statute as is usually the case when the Court announces a new rule of substantive criminal law. *See, e.g., Bousley v. United States,* 523 U.S. 614, 620–21, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Murr v. United States,* 200 F.3d 895, 905–906 (6th Cir.2000). Rather, the issue that confronted the Court was whether New Jersey's *procedure* for enhancing criminal sentences based on certain factors was consistent with the Constitution. Therefore, we find that *Apprendi* announced a new rule of criminal procedure, the retroactive application of which is governed by *Teague.*

As noted above, *Teague* holds that new rules of criminal procedure generally may not be applied retroactively to cases on collateral review. *See Teague,* 489 U.S. at 310, 109 S.Ct. 1060. However, the Court recognized two exceptions to this general rule. First, a new rule of criminal procedure may be applied retroactively to cases on collateral review if the rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* at 311, 109 S.Ct. 1060 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)). Second, retroactive application is proper if the new rule is a "'watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (quoting *Teague,* 489 U.S. at 311, 109 S.Ct. 1060).

■ On the facts before us, only the second exception to *Teague's* general rule is potentially applicable. *See Ware v. United States,* 124 F.Supp.2d 590, 593 (M.D.Tenn.2000). That is, the rule of *Apprendi* may be applied retroactively to Portuondo's petition only if it is a rule of criminal procedure "without which the likelihood of an accurate conviction is seriously diminished." *Teague,* 489 U.S. at 313, 109 S.Ct. 1060. Subsequent Supreme Court decisions have made clear that a "rule that qualifies under this exception must not only improve accuracy, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). Therefore, we must consider whether *Apprendi* falls within this limited exception to the general rule of *Teague.*

A majority of lower courts that have considered this issue has determined that the rule announced in *Apprendi* was a rule

of criminal procedure which is not so important as to justify departing from the general prohibition against retroactive application in cases on collateral review. *See, e.g., Sanders,* 247 F.3d at 147–51; *Ware,* 124 F.Supp.2d 590, 599–600; *United States v. Pittman,* 120 F.Supp.2d 1263, 1270 (D.Or.2000). These courts based their conclusions on two aspects of *Apprendi* which they determined do not satisfy *Teague's* requirements.

First, these courts determined that *Apprendi* does not greatly improve "the likelihood of an accurate conviction." *Teague,* 489 U.S. at 313, 109 S.Ct. 1060. While they concede that a jury applying a reasonable doubt standard may "promote marginally more accurate results," *Sanders* at 149–50, these courts have ultimately concluded that "shifting an element of the offense from jury to judge and utilizing a preponderance rather than a beyond a reasonable doubt standard does not implicate fundamental fairness" so as to come within *Teague's* second exception. *Pittman,* 120 F.Supp.2d at 1270.

Second, courts which have concluded that *Apprendi* does not fall within *Teague's* second exception found that its rules are not "the types of watershed rules implicating fundamental fairness that require retroactive application on collateral attack." *Sanders* at 148. Citing the Supreme Court's use of the defendant's right to counsel in criminal trials for serious offenses announced in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as an example of the sort of rule that would come within the exception, *see Saffle,* 494 U.S. at 495, 110 S.Ct. 1257, these courts have determined that the rule of *Apprendi* lacks the requisite "primacy and centrality." *See Sanders* at 150.

In contrast with this majority position, a few lower courts have concluded that the rule of *Apprendi* is "so grounded in funda-

mental fairness that it may be considered of watershed importance." *United States v. Murphy,* 109 F.Supp.2d 1059, 1064 (D.Minn.2000). *See also Darity v. United States,* 124 F.Supp.2d 355, 359–61 (W.D.N.C. Dec.4, 2000); *United States v. Hernandez,* 137 F.Supp.2d 919, 930–31 (N.D.Ohio 2001). These courts relied upon the significant roles that the jury and the reasonable doubt standard of guilt play in "the American scheme of criminal procedure." *Hernandez* at 931 (citations omitted). Finding that the effect of *Apprendi* is as "sweeping" and "profound" as that of *Gideon,* these courts concluded that *Apprendi* may be applied retroactively to cases on collateral review. *See Murphy* at 1064; *Hernandez* at 931.

With respect to whether *Apprendi* comes within *Teague's* second exception, we again find ourselves in agreement with the Fourth Circuit's holding in *Sanders.* We find that the rule *Apprendi* announced is not such a "paradigmatic watershed principle" as to justify its retroactive application to cases on collateral review for two reasons.

First, while accuracy may be improved by submitting elements such as drug quantity to a jury for a determination beyond a reasonable doubt, we do not believe that such a shift is fundamental to the fairness of the proceedings. *See Ware,* 124 F.Supp.2d at 599–600 ("It is difficult to imagine a case in which the accuracy of the weight of the drugs is so disputed that a reasonable doubt standard as applied by a jury will greatly increase the likelihood of an accurate determination and thereby increase the fundamental fairness of the trial."). That this is so is reflected by "the fact that the majority of the federal circuit courts have subjected *Apprendi* claims to harmless and plain error review." *Sanders* at 150 (citations omitted). For us to conclude that a failure to comply with *Ap-*

*prendi* is not "structural error," and then to apply *Apprendi* retroactively because of its watershed importance would be inconsistent. *See id.*

Second, we believe the second *Teague* exception is so narrow that all but the most fundamental rules of criminal procedure are excluded from its coverage. Support for this finding is abundant. The *Teague* Court itself noted:

> Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of the view that such rules are "best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods."

*Id.* at 313–14, 109 S.Ct. 1060 (quoting *Rose v. Lundy*, 455 U.S. 509, 544, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)) (Stevens, J., dissenting) (footnotes omitted).

Also, since *Teague* was decided in 1989, the Supreme Court has never used *Teague's* second exception to justify the retroactive application of a new rule of criminal procedure. *See Mandanici*, 205 F.3d at 529 (noting that "[b]eginning with the rule at issue in *Teague*, the Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively").

Finally, the *Sanders* court's conclusion is especially persuasive:

> It is important, finally, to keep the ebbs and flows of criminal process in some perspective. The Constitution embodies many important protections for those accused of crime. The rights to counsel, to trial by jury, and to be proven guilty beyond a reasonable doubt are all fundamental rights. These watershed principles in turn spawn numerous subsidiary questions, which are closer to the constitutional margins. These subsidiary questions may qualify as arguable applications of a bedrock principle, but they are not core guarantees themselves.

*Sanders*, 247 F.3d at 151.

The right to trial by jury and the right to be proven guilty beyond a reasonable doubt are "bedrock elements essential to the fairness of a proceeding." While the rule announced in *Apprendi* is an application of those bedrock principles, "[t]he Supreme Court has never intimated that [such] offshoot cases would somehow automatically apply retroactively simply because they bear some level of descendancy to [their] ancestral rule[s] . . . ." *Id.* We find that the rule of *Apprendi* may not be applied retroactively to Portuondo's § 2255 petition and that, therefore, that part of his petition which relied upon *Apprendi* will be dismissed.

## II. Ineffective Assistance of Counsel

■ The second basis of Portuondo's petition was the "[d]enial of effective assistance of counsel at the appeal stage for not filing request notice of appeal and for not profecting [sic] appeal." DN 271. Because the right to the effective assistance of counsel is not a "newly recognized" Constitutional right, and because Portuondo cannot claim that the one-year statute of limitations began running on an alternative date, the limitations period began running on September 30, 1999, the date Portuondo's conviction became final. Therefore, the one-year limitations period for filing a § 2255 petition expired on September 30, 2000, approximately one month before Portuondo filed his petition. Since Portuondo's petition with respect to his

ineffective assistance of counsel argument was untimely, we must address whether the doctrine of equitable tolling is applicable.

While the Sixth Circuit has not directly addressed the issue, several other courts have found that the § 2255 statute of limitations is subject to equitable tolling in rare and exceptional circumstances. *Calderon v. United States Dist. Court for the Cent. Dist. of Cal.,* 128 F.3d 1283, 1288–89 (9th Cir.1997), *overruled on other grounds,* 163 F.3d 530 (9th Cir.1998). *See also Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir.2000); *Moore v. United States,* 173 F.3d 1131, 1134 (8th Cir.1999); *Kapral v. United States,* 166 F.3d 565, 567 (3rd Cir. 1999). At least one court has come to the opposite conclusion that the limitations provision in § 2255 is not subject to tolling because it is jurisdictional and not procedural. *See Giles v. United States,* 6 F.Supp.2d 648, 649 (E.D.Mich.1998). *But see Warren v. United States,* 71 F.Supp.2d 820 (S.D.Ohio 1999).

█ It is unnecessary to determine whether or not the doctrine of equitable tolling is available in the context of § 2255 because even assuming that it is, the doctrine would be inapplicable to the facts with which we are faced. Portuondo requests that the § 2255 limitations period be tolled because he "is having trouble in receipt of documents needed to advance his position on the § 2255 to its fullest possible argument, at present." Pet.'s Mot. (DN 268). Portuondo offers no authority for his position and fails to allege facts which could conceivably constitute "rare and exceptional circumstances." *See* DNs 271, 273.

Even courts which acknowledge the availability of equitable tolling in the context of § 2255 refuse to apply the doctrine absent a specific showing by the petitioner that he or she was unable to meet the one-year deadline because of extraordinary circumstances. *See, e.g., United States v. Cicero,* 214 F.3d 199 (D.C.Cir.2000); *Paige v. United States,* 171 F.3d 559 (8th Cir. 1999). Assuming that the doctrine of equitable tolling is available in this matter, we find that Portuondo's bare assertion that he had "trouble" obtaining necessary documents, without more, would be insufficient to justify our tolling the § 2255 limitations period. That part of Portuondo's § 2255 petition based on the ineffective assistance of counsel will be dismissed as untimely.

## CONCLUSION

For the above reasons, we find that Portuondo's § 2255 petition as it relates to his *Apprendi* claim should be dismissed because the new rule of criminal procedure announced in *Apprendi* may not be retroactively applied to Portuondo. We also find that Portuondo's petition with respect to his ineffective assistance of counsel claim is time barred and that the doctrine of equitable tolling, assuming it may be applicable, would not justify a different conclusion. A separate order will be entered this date in accordance with this opinion.

## *ORDER*

Motion having been made, and the court being otherwise sufficiently advised, and for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the *pro se* movant/defendant, Francisco Portuondo–Gonzales, for an extension of time to file a petition pursuant to 28 U.S.C. § 2255 (DN 268) is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Portuondo's petition for relief pursuant to 28 U.S.C. § 2255 (DN 271) is **DISMISSED.**